THE LUCY C. AYERS HOME FOR NURSES, INCORPORATED *vs.*
JEAN M. FALES *et al.*

APRIL 21, 1950.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CONDON, J. This cause is here on an agreed statement of facts. It was certified by the superior court for our determination pursuant to general laws 1938, chapter 545, §4. The question to be determined has arisen under the will of Bessie Tweedie whose estate is in course of administration in the probate court of Providence. The travel of the cause and the circumstances out of ·which it grew are set out at length in the statement of facts. The following summary, however, will suffice for our purposes.

Bessie Tweedie died domiciled in Providence and her will was duly probated there on October 21, 1947. Her personal estate in Rhode Island was inventoried at $21,419.05 and was sufficient to pay her debts and all other lawful and proper charges against it as costs of administration here and in California. In that state she owned a parcel of real estate which yielded income from oil rents and royalties and which she devised in equal shares to her nieces, Jean M. Fales and Evelyn W. Nightingale. At the request of Richard W. Lisle as executor in Rhode Island and with the knowledge and consent of Evelyn W. Nightingale, Jean M. Fales filed an authenticated copy of the will for probate in California. E. W. Haskell of Los Angeles was duly appointed administrator *c.t.a.* of the decedent's estate ·in that state. However, decedent had no known debts in California and no claims were filed against her estate there. The only disbursements were as follows: appraiser's fee $37; administrator's statutory commissions $1050; attorney for administrator, fee $1050; filing fees and court costs in ancillary proceedings in California $53.85; a total of $2190.85. That amount was forwarded by the executor to the administrator *c.t.a.* out of the personal estate in Rhode Island.

The estate in California was appraised at $36,000 and commissions and fees of the administrator and his attorney respectively were based thereon. The executor also paid

the California inheritance tax of $1490.46 which was computed on a net estate of $33,809.20 after deducting the above administration expenses. The administrator *c.t.a.* filed his final account in the superior court of California for the county of Fresno and it was duly approved. That court also ordered him to transmit to the executor in Rhode Island certain sums which had come into his hands from rents and royalties of the real estate accruing from time to time subsequent to the decease of the testatrix. This sum amounted to $9982.31 and has been received by the executor.

After the ancillary administration in California was completed a question arose as to the construction to be made of the sixth and seventh clauses of the will in connection with the allocation of the expenses of such administration, that is, whether they should be borne by the devises of the California real estate or by the residuary clause. The executor thereupon for the first time sought the advice of the probate court by filing a petition for the construction of the above clauses in accordance with the provisions of G. L. 1938, chap. 579, §15. After a hearing the probate court entered the following decree: "Upon consideration of the testimony introduced, the Court finds that the expenses of the California administration should be borne by the residuary estate."

The Lucy C. Ayers Home for Nurses, Incorporated, hereinafter called the appellant, the sole residuary legatee and devisee under the seventh or residuary clause, appealed from that decree to the superior court. In its reasons of appeal appellant alleges that such decree is contrary to law and should be reversed so that all expenses of ancillary administration should be charged to the devises of the real estate in California and not to the residuary estate in Rhode Island. It also alleges that the adversary parties to its appeal are Jean M. Fales and Evelyn W. Nightingale, devisees of said real estate under the sixth clause, and Richard W. Lisle, as executor. They are hereinafter referred

to as appellees. Such appellant and appellees, by their respective attorneys, signed and caused to be filed the agreed statement of facts which resulted in the cause being certified to this court.

In this court the real adversaries to the appellant were Jean M. Fales and Evelyn W. Nightingale. Lisle states in his brief that being involved merely as the executor of the estate and as such being impartial and concerned only with the best interests of all beneficially entitled under the will, he makes no contention as to how the question should be determined but submits it to the court. In view of his neutral attitude any reference hereinafter to contentions of the appellees should be understood as applying only to appellees Fales and Nightingale.

The sixth and seventh clauses of the will read as follows:

"Sixth: All of my interest in that parcel of real estate located in the County of Fresno, in the State of California, bounded and described as follows:

Northwest quarter of Northeast quarter of Southeast quarter (NW ¼ of NE ¼ of SE ¼ of Section Six (6), Township Twenty (20) South, Range Sixteen (16) East, M.D. B. & M.

being the same premises leased by me to The Texas Company by lease dated May 2, 1938, including all rentals, royalties and other payments from time to time payable under said lease and all of my other rights growing out of my ownership of said real estate, I give, devise and bequeath in equal one-half (½) shares to my said niece, Evelyn W. Nightingale, and my said niece, Jean M. Fales.

Seventh: All the rest, residue and remainder of the property, both real and personal, of which I shall die seized and possessed or over which I shall have any power of testamentary disposition at the time of my decease, I give, devise and bequeath to The Lucy C. Ayers Home for Nurses, Incorporated, a Rhode Island corporation, located in said Providence."

Under the eighth clause the executor is directed to "pay all death duties, legacy, transfer or inheritance taxes, or other

similar taxes, howsoever designated, by whatever jurisdiction imposed, out of my residuary estate, `and that the same shall be a charge upon such residuary estate to the exoneration of all legacies and beneficial interests given under this will."

Appellees contend in support of the probate court's decree that the will manifested an intention on the part of the testatrix to devise her real estate in California discharged of any and all burdens so that it would come to her devisees free and clear. They further argue that to adopt a contrary view would be to read into the will an intention to leave them, her own kin, to pay indeterminate expenses before they could come into the enjoyment of her gift while at the same time exonerating, in effect, the legacy to the residuary legatee, a corporate charity, from such burden, which they assert would be exactly the reverse of the testamentary direction implicit in the eighth clause.

Appellant contends that the will discloses no intention either directly or by implication that *the expenses in question here* should be paid out of the residuary estate. It argues that the words in the eighth clause "to the exoneration of all legacies and beneficial interests given under this will" do not refer to expenses of administration at all but solely to "all death duties, legacy, transfer or inheritance taxes, or other similar taxes * * *." Moreover appellant finally contends that if the testatrix had intended to include such expenses in that enumeration she could easily have done so without leaving it to be found by implication.

The testatrix, in our opinion, has not used language which clearly expresses an intention to cast the burden of such expenses upon her residuary estate. It is true that the language of the eighth clause does direct that such estate shall bear the burden of death duties, inheritance taxes and other similar taxes in exoneration of all beneficial interests under the will, but the California taxes of that nature are not expenses of administration of the estate in Rhode Island and hence expenses incurred in ascertaining

the amount of those taxes cannot be considered as an expense of administration here. *Hazard* v. *Board of Tax Comm'rs,* 43 R. I. 431. They might well have been considered and treated in the nature of such expenses had the executor been compelled to pay the California taxes to obtain control of the realty there for the benefit of the estate. *Bullard* v. *Redwood Library,* 37 R. I. 107. Here there was no such necessity. In causing ancillary administration to be taken out in California the executor neither sought nor obtained control over the real estate in that state for the benefit of the Rhode Island estate. Aside from the determination of the exact amount of the tax which he had to pay there, the only object that he accomplished' by such administration was the clearance of the title to the real estate devised; and that was for the sole benefit of the devisees.

Under California law title to real property of a decedent passes to the person to whom it is devised, although it is subject to the possession of the executor or administrator if necessary for the purposes of administration. Deering Cal. Code Civ. Proc., Probate Code, Div. III, art. I, §300. That is also the law generally. 21 Am. Jur., Executors and Administrators, §289. The executor is not obliged to take possession unless such action is necessary to protect creditors of the estate. *Tunnicliff* v. *Fox,* 68 Neb. 811. This phase of the law is well summarized as follows: "If the real estate of a decedent, in the absence of a contrary testamentary disposition, and when not needed for the payment of debts, passes directly to the heirs or devisees, it is as much beyond the authority and duty of the personal representatives as if it had not been the property of the testator or intestate." 2 Woerner Am. Law of Admn. (3d ed.) 1147.

In the case at bar decedent owned no personal property and owed no debts in California. There was ample personal estate here to pay all debts which were due and payable in Rhode Island. There may have been a necessity for ancil-

lary proceedings in California to clear the devised real estate of the lien of the state tax there but that necessity concerned only the devisees. Under the will they were entitled to have their devises exonerated from the California tax and it was incumbent upon them in their own interest to ascertain and make known to the executor the amount of such tax. Thereafter it would be his duty to pay the tax in accordance with the direction of the testatrix. That, however, was the limit of such duty at least so far as the express testamentary mandate was concerned. Expenditures incurred beyond the scope of such duty and not for the benefit of the estate are needless and not allowable in his account. 2 Schouler on Wills, Ex'rs and Adm'rs (5th ed.) 1673, §1544.

Conceding that the will did not expressly direct the payment by her executor of the expenses of ancillary administration in California, is such an intention nevertheless necessarily implied therein? Appellees apparently argue that it is because it is unreasonable to suppose that the testatrix could have intended that they should be burdened with any expense, even that of determining the tax, in view of her own express wish that the devises be exonerated from all such taxes. And they argue further that it is unreasonable to suppose that she intended to benefit a mere corporate legatee at the expense of her own blood relatives, which would be the case if the devises were to be charged with these expenses and the residuary legatee thus relieved therefrom.

We are of the opinion that the rule of necessary implication in ascertaining testamentary intention is not applicable in the circumstances here. That rule as approved in this state is that the intention must be so probable that the court could not reasonably suppose an intention to the contrary. *Calder* v. *Curry,* 17 R. I. 610. See also *Goddard* v. *Goddard,* 9 R. I. 293. Here it is by no means unreasonable to find from the very language of the testatrix herself that she intended to exonerate the devises *solely* from the

inheritance tax. She took the trouble to phrase a specific direction of exoneration and enumerate therein the items from which the devises should be exonerated, but she did not include expenses of administration and especially expenses of ancillary administration. In fact her will is somewhat singular in that she directs her executor by the first clause to pay merely her "just debts and my funeral expenses" without referring at all to expenses of administration or other charges as is customarily done. In our opinion this omission together with the fact that in the eighth clause she could very easily have included those expenses, if such were her intention, militates strongly against any application to this will of the rule of "necessary implication." In any event we think that the testatrix clearly expressed her intention by the language which she employed, and that language definitely provides for exoneration of the legacies and beneficial interests thereunder only from "death duties, legacy, transfer or inheritance taxes, or other similar taxes * * *."

The above discussion disposes of the appellees' contention that the testatrix intended to charge her residuary estate with expenses of ancillary administration in California and exonerate the devises therefrom. There remains to be considered, however, a further contention that under the law of this state such expenses are expenses of administration and therefore chargeable to the personal estate in accordance with general laws 1938, chapter 579, §§1, 2; or that they are "reasonable and proper charges and disbursements" made by the executor in the execution of his trust and hence should be allowed in his account pursuant to general laws 1938, chapter 580, §6. If either of those contentions is sound the personal estate in Rhode Island being sufficient therefor will bear the burden of such expenses and thus the devises of the real estate in California will be exonerated therefrom.

As we have seen in the discussion of the testamentary intention the term "expenses of administration" within the

meaning of §1 does not embrace ancillary administration expenses, especially where such administration is not necessary for the protection or does not otherwise redound to the benefit of the domiciliary estate. In the case at bar the estate in Rhode Island did not stand in need of and did not derive any benefit from such administration, hence it is not an expense of administration allowable as such in the account of the domiciliary administration here.

For the same reasons such expenses cannot be considered as having been properly incurred by the executor in the execution of his trust. To repeat what has hereinbefore been said it was not his duty to institute ancillary administration proceedings. His duty with reference to the devised California real estate did not extend beyond paying the California inheritance tax in accordance with the express mandate of the will. In requesting appellee Fales to cause the will to be probated in California he must be deemed to have assumed voluntarily a burden which rested upon the devisees. It was in no sense an act done in the execution of his trust for the benefit of the estate. In such circumstances the expense incurred is not allowable in his account, but he must look to the devisees for reimbursement. 3 Woerner Am. Law of Admn. (3d ed.) 1786, 1791. Moreover even if the expenses were legitimate they are not properly allowable under the domiciliary administration but rather under the ancillary administration. There is no privity between them even though both be conducted by the same person. *Dolan* v. *Anthony,* 51 R. I. 181. Hence the accounts of each administration must be settled in its own jurisdiction. *In re Healey's Estate,* 4 N. J. Misc. 785. 3 Beale Conflict of Laws 1562.

In the case at bar the superior court of California has exercised such jurisdiction over the ancillary estate there. The present difficulty is due to the necessity of the executor accounting for the amount advanced by him out of the domiciliary estate for the expenses of ancillary administration. There has thus arisen the vital question of who shall

bear those expenses. We have determined that the domiciliary estate cannot lawfully be burdened with them and that the probate court erred in finding that they should be borne by the residuary legatee. Therefore the executor may not have them allowed in his account here as expenses of administration under our statute.

The papers herein, with our decision certified thereon, are hereby ordered sent back to the superior court for further proceedings in accordance with the provisions of general laws 1938, chapter 545, §4.

### ON MOTION FOR REARGUMENT.
#### MAY 26, 1950.

PER CURIAM. After our opinion in the above-entitled case was filed the appellee executor by motion requested and received permission to reargue the case merely in order to determine whether we should clarify certain statements in the opinion pertaining to the question whether in the settlement of his accounts in the probate court of Providence the executor was entitled to credit himself and debit the devisees with the sum of $2190.85 which he paid for the expenses of administration of the ancillary estate in California.

The executor argues that we decided that question in his favor when in our opinion we stated that he "must look to the devisees [Jean M. Fales and Evelyn W. Nightingale] for reimbursement." The devisees claim that we decided in their favor by our statement that the executor "must be deemed to have assumed voluntarily a burden which rested upon the devisees" when he was under no duty so to do.

Neither view is a correct interpretation of our opinion. In making the statement relied upon by the executor we intended merely to point out that the expenses of administration of the ancillary estate were specially chargeable to such estate which consisted solely of the devised real estate in California, as we had already held that they were not expenses of administration in Rhode Island and, therefore, were not properly chargeable to the residuary legatee.

In making the statement relied upon by the devisees we intended simply to emphasize that the executor did not act in the discharge of any duty incumbent upon him in the administration of the domiciliary estate when he incurred the expenses of administration of the ancillary estate in California. Therefore our opinion should not be interpreted as deciding either in favor of or against the contentions of the executor or the devisees on the point in question, as it was not properly before us for decision.

We did not decide whether in some proceeding other than that of the settlement of his accounts in the probate court of Providence the executor could recover or be given credit for the sum which, on behalf of the devisees and with their knowledge and consent, he paid in the administration of the ancillary estate. Irrespective of any statement in our opinion which, out of context, might be susceptible of a contrary view, we now expressly state that the question of the mutual rights and obligations of the executor and the devisees with reference to the sum of $2190.85 which was paid for the expenses of ancillary administration remains open to such parties to litigate as they may be advised without prejudice to either party in any respect.

The papers in the case with our decision as above clarified certified thereon are ordered sent back to the superior court for further proceedings in accordance with the provisions of general laws 1938, chapter 545, §4.

*Fred A. Otis,* for appellant.

*McGuirk & Martin,* for appellees Jean M. Fales and Evelyn W. Nightingale.

*Tillinghast, Collins & Tanner,* for appellee Richard W. Lisle, Executor.